**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| LINDA LUX, et al., § | |
| § | |
| **Plaintiffs,** § | |
| § | |
| v.                                             § | **Civil Action No. 3:13-CV-1697-M** |
| § | |
| THE BANK OF NEW YORK MELLON, *as* § | |
| *Trustee for the Certificatesholders of CW* § | |
| *ABS Inc, Asset-Backed Certificates, Series* § | |
| *2006-25, formerly known as The Bank of* § | |
| *New York*, § | |
| § | |
| **Defendants.** § | |

## <u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION</u>

Pursuant to the *Standing Order of Reference* dated May 9, 2013, this case has been referred

for pretrial management.  Before the Court is *Defendant's Motion to Dismiss and Brief in Support*,

filed May 10, 2013 (doc. 5).  Based on the relevant filings and applicable law, the motion should be

**GRANTED.**

## I.  BACKGROUND

This action involves the attempted foreclosure of real property located at 3319 Duchess Trail,

Dallas, Texas 75229 (the Property).  (Orig. Compl. (doc. 1-1) at 9.)[1]  On April 8, 2013, Linda Lux

(Lux) and Bormio Investments, Inc. (Bormio) (collectively, Plaintiffs) sued Bank of New York

Mellon, formerly known as the Bank of New York, as Trustee for the Certificate Holders, CWABS,

Inc., Asset-Backed Certificates, Series 2006-25 (Defendant) in state court, asserting claims for

violations of the Texas Constitution and "holder in due course."  (*Id.* at 9–10.)

---

[1]  Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers
at the bottom of each filing.

Plaintiffs allege that on December 8, 2006, Lux refinanced the Property with a home equity loan from America's Wholesale Lender (AWL) in the amount of $275,000.00.  (*Id.* at 9.)  She executed a promissory note and a deed of trust securing the note in AWL's favor.  (*Id.*)  Both the note and deed of trust identified AWL as "Lender."  (D. Mot. App. (note) (doc. 5-2) at 1; (deed of trust) (doc. 5-3) at 1.)  The deed of trust named Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee for Lender and its successors and assigns and as the beneficiary of the deed of trust.  (doc. 5-3 at 2.)  The deed of trust also granted MERS the right to exercise any and all of the interests Lux granted Lender, including foreclosing and selling the Property upon default and releasing and canceling the deed of trust. (*Id.* at 3.)  According to the complaint, Defendant succeeded AWL as Lender and as beneficiary of the note and deed of trust.  (doc. 1-1 at 9.)

Lux apparently defaulted, and on December 29, 2011, Defendant filed an action in state court to foreclose and sell the Property.  (*Id.*)  Sometime after that, Bormio allegedly purchased the Property and became its "owner."  (*Id.*)  According to the complaint, the home equity loan violated the Texas Constitution, article XVI, § 50(a)(6)(B) because it exceeded 80 percent of the Property's fair market value; it also violated § 50(a)(6)(E) because Lender charged more than 3 percent of the principal loan amount in closing costs.  (*Id.* at 10.)  On March 29, 2012, Plaintiffs purportedly sent Defendant a 60-day notice to correct the violations, as provided by § 50(a)(6)(Q)(x), but to no avail. (*Id.*)  They also claim that Defendant must produce the original note, together "with all [the] necessary assignments," prior to foreclosing on Property.  (*Id.*)  They seek actual and statutory damages, declaratory judgment, attorney's fees, and court costs.  (*Id.* at 11–12.)

Defendant removed the action to federal court on May 3, 2013, based on diversity jurisdiction, and moved to dismiss the complaint a few days later.  (docs. 1 and 5.)  With a timely-

filed response and reply, the motion is now ripe for recommendation.

## II. MOTION TO DISMISS

Defendant moves to dismiss Plaintiffs' complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (doc. 5.)

### A.  <u>Rule 12(b)(6) Standard</u>

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the pleadings.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert denied*, 530 U.S. 1229 (2000); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that

is plausible on its face."  *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678  (quoting *Twombly*, 550 U.S. at 570).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion.  *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion.  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz  Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  "If . . . matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Documents "attache[d] to a motion to dismiss are [also] considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]."  *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs.,*

*Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). Lastly, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

Here, Defendant has attached to its motion copies of what it contends are the note and the deed of trust. (docs. 5-2 and 5-3.) These documents are referenced in Plaintiffs' complaint and are central to their theory of the case; they are therefore considered part of the pleadings. *See Collins*, 224 F.3d at 499. Conversion of the motion to dismiss into a motion for summary judgment is therefore unnecessary. *See id.*[2]

## B.     Texas Constitution

Defendant first seeks dismissal of Plaintiffs' claims that the loan exceeded 80 percent of the Property's value in violation of § 50(a)(6)(B) and that Lender charged more than 3 percent of the principal loan amount for closing costs in violation of § 50(a)(6)(E).[3] (doc. 5 at 4–5.) It argues that even assuming that Plaintiffs' contentions are true, the claims fail because they are time-barred. (*Id.*)

---

[2] Defendant also attached to its motion a copy of MERS's assignment of the deed of trust to Defendant on August 30, 2011. (*See* doc. 5-4.) It argues that although not attached to the complaint, the assignment is part of the pleadings because it is referenced in the complaint and central to Plaintiffs' claims. (doc. 5 at 2.) The complaint references *the absence* of "all necessary assignments," however, it does not reference MERS's assignment specifically. (*See* doc. 1-1 at 10.) The assignment is a matter outside the pleadings and is not considered with Defendant's motion to dismiss. *See Platero v. Bank of Am., N.A.*, No. 3:11-CV-3421-M, 2012 WL 2368465, at *5 (N.D. Tex. May 25, 2012), *rec. adopted*, 2012 WL 2373297 (N.D. Tex. June 21, 2012) (explaining that where the complaint refers to the absence of a document, the document is a matter outside the pleadings that cannot not be considered under Rule 12(b)(6)).

[3] Section 50(a)(6) of the Texas Constitution places numerous restrictions on home mortgages. Section 50(a)(6)(B) prohibits loans that, when added to the principal balances of all other liens, exceed 80 percent of the home's fair market value. Tex. Const. Ann. art. XVI, § 50(a)(6)(B) (West 2006). In turn, § 50(a)(6)(E) prohibits a lender from requiring the borrower "to pay, in addition to any interest, fees . . . that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount." *Id.* § 50(a)(6)(E). A debtor may give the lender notice of a constitutional violation, and the lender has 60 days to cure it. *Id.* § 50(a)(6)(Q)(x). If the lender fails to correct the defect during the 60-day window, it forfeits all principal and interest on the loan. *Id.*

Although the statute of limitations is an affirmative defense, a defendant may move for dismissal under Rule 12(b)(6) if the facts giving rise to this defense "appear[] on the face of the complaint." *Simmons v. Local 565 Air Transp. Div. Transp. Workers Union of Am. AFL-CIO*, No. 3:09-CV-1181-B, 2010 WL 2473840, at *4 (N.D. Tex. June 16, 2010) (citing *Kansa Reinsurance Co. v. Cong. Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

### 1.    Applicable Limitations Period

Section 50(a)(6) of the Texas Constitution does not include an express statute of limitations. *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 673 (5th Cir. 2013), *cert. denied*, —U.S.—, 134 S. Ct. 196, —L. Ed.2d —, 2013 WL 3193331 (U.S. Oct. 7, 2013). Texas law provides for a "residual" four-year limitations period that applies in "[e]very action for which there is no express limitations period, except an action for the recovery of real property."[4] Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 2008). In *Priester*, the Fifth Circuit acknowledged that "the Texas Supreme Court has not addressed whether [the] residual limitations period applies to defects in homestead liens," but noted that the intermediate appellate courts that had addressed the issue had held in the affirmative. *Priester*, 708 F.3d at 673. Citing to various Texas cases "that had applied the residual limitations period to other types of [state] constitutional claims," the Fifth Circuit concluded that this limitations period also "applies to constitutional infirmities under Section 50(a)(6)." *Id.* at 673–74.[5] Notably, the Court rejected the plaintiffs' argument that "no statute of

---

[4] Plaintiffs concede they have not yet lost ownership or possession of the Property, and they filed suit to prevent such losses. (*See, e.g.*, doc. 1-1 at 9 ("This property is plaintiff's homestead.") ("Bormio . . . is the current owner.").) Accordingly, this exception is inapplicable here.

[5] The Court agreed with the lower courts' reasoning that even "constitutional rights may be subjected to [] time limitations" because they are "encumbered by the same problems as are other types of claims—they may become stale as do other claims, and bring with them the associated problems with overdue lawsuits, such as faded memories, departed witnesses, and misplaced evidence." *Priester*, 708 F.3d at 673 (internal quotations omitted).

limitations applies" to "liens created in violation of Section 50(a)(6)" because these are void *ab initio* rather than merely voidable. *Id.* at 674. Based on Texas Supreme Court precedent and the Texas "the constitutional scheme," the Court concluded that the "cure provision" of § 50(a)(6)(Q)(x) makes "liens that are contrary to the requirements of § 50(a) [] voidable rather than void from the start." *Id.* n.4 (citing to *Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342, 347 (Tex. 2001) ("We hold that section 50(a)(6)(Q)(x) operates as authority to cure not only the particular lender obligation at issue under section 50(a)(6), but also *to validate* the lien.")) (emphasis added).

Although *Priester* involved §§ 50(a)(6)(M),(N),[6] the Fifth Circuit has subsequently extended its holding to actions under the subsections at issue here. *See Wiltse v. Carrington Mortgage Servs., L.L.C.*, No. 13-10078, 2013 WL 5289063, at *1 (5th Cir. Sept. 20, 2013) (per curiam) (holding that the plaintiff's argument "that the residual limitations period does not apply" to actions under §§ 50(a)(6)(B),(E) was "foreclosed by [the Court's] holding in *Priester*").[7] Accordingly, Plaintiffs' claims under §§ 50(a)(6)(B),(E) are subject to Texas's residual limitations period. *See id.* To state a claim for relief, it must appear from the face of their complaint that they filed suit within four years after the alleged claims accrued. *See Priester*, 708 F.3d at 674; *Simmons*, 2010 WL 2473840, at *4.

### 2.   Accrual

The Texas constitution does not "define the accrual date" for purposes of § 50(a)(6). *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 840 (Tex. App.—Dallas, 2008, no pet.). In

---

[6]   The plaintiffs in that case alleged that their home equity loan violated § 50(a)(6)(M)(i) because the "closing of the loan occurred in their home rather than at the office of an attorney, the lender, or a title company", and that it violated § 50(a)(6)(N) because "they did not receive notice of their rights twelve days before closing as required by the state constitution." *Priester*, 708 F.3d at 671.

[7]   As one district court has explained, "the language in *Priester* is broad enough to subject all alleged violations of section 50(a)(6)'s numerous subsections to the residual limitations period . . . and there is no principled basis for distinguishing the various subsections for limitations purposes." *Ausmus v. Deutsche Bank Trust Co. Nat. Ass'n*, No. 3:13-CV-148, 2013 WL 3938515, at *3 n.3. (S.D. Tex. July 29, 2013).

*Priester*, the Fifth Circuit first noted that the general rule in Texas, known as the "injury rule," provides that a "cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Priester*, 708 F.3d at 675 (citing *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)). It also noted that the "discovery rule" is a "very limited" exception that "operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim."[8] *Id.* (citing *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001)). Noting that state and federal district "courts ha[d] applied the injury rule rather than the discovery rule in every case in which they ha[d] applied limitations to Section 50(a)(6) violations," the Court "conclude[d] that the legal injury rule applies to the creation of unconstitutional liens." *Id.* at 675. Consequently, it held that a cause of action for violations of § 50(a)(6) accrues on the date of the "lien's closing."[9] *Id.* at 675–76 (citations omitted).

Here, Plaintiffs allege that Lux executed the promissory note and deed of trust on December 8, 2006. (doc. 1-1 at 9.) The copies of the note and deed of trust attached to Defendant's motion indicate that she closed on the home equity loan on that date. (*See* docs. 5-2 at 1; 5-3 at 1.) Both documents also show the principal loan amount to be $275,000.00. (doc. 52- at 1, 5-3 at 2.) If the loan exceeded 80 percent of the Property's fair market value on December 8, 2006, then any violation of § 50(a)(6)(B) occurred on that date. *See Priester*, 708 F.3d at 675–76. Likewise, if

---

[8]  Texas courts apply the discovery rule only in those cases where the nature of the plaintiff's injury is "inherently undiscoverable," meaning that "it is nearly impossible for the plaintiff to be aware of his injury at the time he is injured." *Priester*, 708 F.3d at 676 (citing *S.V. v. R.V.*, 933 S.W.2d 1, 6–7 (Tex. 1996)).

[9]  The Fifth Circuit further concluded that *Priester* was not "one of those 'rare' instances in which the discovery rule applie[d]" because there was nothing in the transaction "that made the [plaintiffs'] injury undiscoverable" since on the date of closing "they knew that the closing documents were signed in their living room and that they were not given notice of their rights." *Priester*, 708 F.3d at 675–76.

Lender charged more than 3 percent of the principal loan amount for closing costs, any violation of § 50(a)(6)(E) occurred on that date as well.[10]  *See id.*  Accordingly, limitations began to run on that date and expired on December 8, 2010.  Because Plaintiffs did not file suit until April 8, 2013, any claims under §§ 50(a)(6)(B),(E) are time-barred and fail as a matter of law.  *See Wiltse*, 2013 WL 5289063, at *1 (affirming dismissal of the plaintiff's claims under §§ 50(a)(6)(B,)(E) as being barred by the four-year statute of limitations); *Warren v. Bank of Am., N.A.*, No. 3:13-CV-1135-M, 2013 WL 6840016, at *8 (N.D. Tex. Dec. 27, 2013) (dismissing with prejudice the plaintiff's claim under §50(a)(6)(B) because it was time-barred).

C.    **Holder in Due Course ("Show-me-the-Note")**

According to Defendant, Plaintiffs' purported "holder in due course" claim that it must produce the original note in order to foreclose is a mere variation of the "show-me-the-note" theory. (doc. 5 at 6; *see also* doc. 1-1 at 10.)  Defendant argue that it fails as a matter of law because the Texas Property Code, the "only statute governing the enforcement of a Deed of Trust . . . does not require the party with the power of sale to hold the note."  (doc. 5 at 6–7.)

Plaintiffs' allegation that Defendant must produce the original note prior to foreclosing on the Property implicates the "show-me-the-note" theory.  *See Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2012 WL 2864751, at *3 (N.D. Tex. June 12, 2012), *rec. adopted*, 2012 WL 2864467 (N.D. Tex. July 12, 2012).  "Advocates of this theory believe that only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure."  *Wells v. BAC Home Loan Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at * 2 (W.D. Tex. Apr. 26, 2011) (internal quotations omitted).  The theory has been repeatedly rejected in this Circuit as having no

---

[10]  Notably, Plaintiffs do not state, and nothing in their pleadings shows, the Property's fair market value on December 8, 2006.  (*See* doc. 1-1 at 8–12.)  They also fail to state the amount that Lender charged for closing costs.  (*See id.*)

merit. *See Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 254 (5th Cir. 2013) ("We find no [] Texas authority requiring production of the 'original' note. The original, signed note need not be produced in order to foreclose."); *Cervantes v. U.S. Bank Nat'l Ass'n*, No. 3:12-CV-0661-D, 2012 WL 1605558, at *3 (N.D. Tex. May 8, 2012) (collecting cases).

"Texas courts have refused to conflate foreclosure with enforcement of a promissory note." *Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011). Under Texas law, promissory notes and deeds of trust are distinct obligations that afford lenders distinct remedies upon default, "the note against the borrower and the lien against the real property." *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug. 30, 2012, no pet.) (mem. op.). When the lender seeks a personal judgment against the borrower, it "must typically demonstrate that it is the holder of the note by producing the original wet-ink instrument."[11] *Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012). By contrast, "[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not the underlying note." *Reardean*, 2011 WL 3268307, at *3.

Chapter 51 of the Texas Property Code governs the procedure for enforcing the "power of sale conferred by a deed of trust or other contract lien." Tex. Prop. Code Ann. § 51.002 (West 2007). Pursuant to the Code, both "a mortgagee and [a] mortage servicer may administer a deed of trust foreclosure without production of the original note." *Crear v. JP Morgan Chase Bank, N.A.*, No. 10-10875, 2011 WL 1129574, at *1, n. 1 (5th Cir. Mar. 28, 2011) (per curiam) (citing to Tex.

---

[11] The Texas Uniform Commercial Code (UCC) governs the procedure for establishing "holder" status. *See* Tex. Bus. & Com. Code Ann. §§ 3.201, 3.203,and 3.204 (West 2002) (providing the requirements for the negotiation, transfer, and endorsement of negotiable instruments).

10

Prop. Code §§ 51.0002, 51.0025).   A "mortgagee" is "the grantee, beneficiary, owner, or holder of a security instrument"; "a book entry system"; or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." Tex. Prop. Code Ann. § 51.0001(4)(A)–(C). A "mortgage servicer" is "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument." *Id.* § 51.0001(3). A mortgagee may be its own mortgage servicer. *Id.*

If the mortgagee is its own mortgage servicer, it may conduct a non-judicial foreclosure sale by following the procedures provided by the Code.[12] *Martins*, 722 F.3d 255. The mortgagee need not produce the original note because its authority to foreclose is determined solely by its "relationship to the deed of trust, rather than the associated note." *Kramer v. Fannie Mae*, No. A–12–CA–276–SS, 2012 WL 3027990, at *7 (W.D. Tex. May 15, 2012); *see also Martins*, 722 F.3d at 255 (explaining that possession of the note is not a requisite to foreclosure since a "deed of trust gives the lender as well as the beneficiary [of the deed of trust] the right to invoke the power of sale, even though it would not be possible for both to hold the note") (internal quotations omitted).

According to Plaintiffs' complaint, Defendant succeeded AWL as Lender and as the beneficiary of the note and deed of trust. (*See* doc. 1-1 at 9.)  As the new beneficiary of the deed of trust (i.e., the mortgagee), Defendant acquired all of the rights that Lux granted Lender, including the power of sale upon default. *See* Tex. Prop. Code § 51.0001(4)(A); (*see also* doc. 5-3 at 3.) Defendant could exercise this right without having to produce the original note. *See Martins*, 722

---

[12]   For instance, § 51.002(d) of the Tex. Prop. Code requires the mortgage servicer to provide to the debtor notice of default and intent to accelerate and to give the debtor an opportunity to cure the default within a minimum of 20 days. *See* Tex. Prop. Code § 51.002(d). If the mortgage servicer invokes the power of sale under the deed of trust, it must provide to the debtor notice of the time and place of the foreclosure sale at least 21 days prior to the date of the sale by posting notice in the county where the property is located, filing the notice with the office of the county clerk, and "serving written notice of the sale by certified mail on each debtor." *See id.* § 51.002(b).

F.3d at 255; *Kramer*, 2012 WL 3027990, at *7.  To the extent Plaintiffs assert a claim against Defendant for any purported failure to produce the note before initiating the foreclosure proceedings, the claim fails as a matter of law and should be dismissed.[13]

**D.      Declaratory Judgment Action**

Lastly, Defendant contends that Plaintiffs' request for declaratory judgment cannot survive without a viable cause of action.  (doc. 5 at 7.)  Plaintiffs seek declaratory relief under the Texas Declaratory Judgments Act, codified in §§ 37.001–37.011 of the Texas Civil Practice & Remedies Code.  (*See* doc. 1-1 at 11.)[14]

"The Texas act is a procedural, rather than substantive, provision, and would generally not apply to a removed action" such as this one.  *See Brock v. Fed. Nat'l Mortg. Ass'n*, No. 4:11-CV-211-A, 2012 WL 620550, at *5 (N.D. Tex. Feb. 24, 2012).  This removed action may therefore be construed as arising under the federal Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201, 2202.  *See Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) ("When a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal [DJA].").

The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court

---

[13] Plaintiffs also assert that Defendant must produce all "necessary assignments."  (doc. 1-1 at 10.)  The Fifth Circuit has expressly adopted the common law rule in Texas "that an obligor cannot defend against an assignee's efforts to enforce [an] obligation on a ground that merely renders the assignment voidable at the election of the assignor," but an "obligor *may* defend on any ground which renders the assignment void."  *Reinagel v. Deutsche Bank Nat. Trust Co.*, 735 F.3d 220, 225 (5th Cir. 2013) (citations omitted) (emphasis in original).  Here, Plaintiffs do not allege or assert any facts to raise a reasonable inference that any assignment of their mortgage is void.  Accordingly, their allegations fail to raise a reasonable inference that they have standing to dispute any such assignment.  To the extent they attempt to challenge the assignment of their mortgage to Defendant, the challenge is not considered.

[14] Plaintiffs request declarations that: (1) they "are no longer obligated to remit any payments to Defendant," (2) the note and deed of trust "are null and void"; and (3) Defendant's lien on the Property "is not valid" because the home equity loan was extended in violation of the Texas Constitution.  (doc. 1-1 at 11.)

of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201 (West 2010). The Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:03-CV-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (internal quotations omitted). It is an authorization, not a command, and gives federal courts broad, but "not unfettered," discretion to grant or refuse declaratory judgment. *Id.*

Here, Plaintiffs' requested declarations are entirely premised on their time-barred claims that the home equity loan violates the Texas Constitution and on their invalid "show-me-the-note" theory. (*See* doc. 1-1 at 9–11.) Since they have failed to state a viable claim for relief against Defendant or show that a genuine controversy exists between the parties, their declaratory judgment action should be dismissed. *See Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory judgment where she had alleged no facts leading to a conclusion that a present controversy existed between her and the defendant); *Turner v. AmericaHomeKey, Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *6–7 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.), *aff'd*, 2013 WL 657772 (5th Cir. Feb. 22, 2013) (declining to entertain the plaintiff's request for declaratory judgment where he had not pleaded a plausible substantive claim).

## III.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*,

No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1. Nonetheless, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiffs' claims for violations of the Texas Constitution fail as a matter of law because they are barred by the statute of limitations. Any claim against Defendant for failure to produce the note prior to initiating foreclosure procedures also fails as a matter of law because it is based on an invalid legal theory. It appears that Plaintiffs have alleged their best case, and an opportunity to amend is therefore unwarranted.

## IV.  RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED,** and all of Plaintiffs' claims against it should be dismissed with prejudice.

**SO RECOMMENDED** on this 30th day of January, 2014.

_Irma Carrillo Ramirez_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

14

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE